**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Gary Debenedetto, | Case No. 24-cv-0660 (JMB/DLM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jared Rardin, Warden, | |
| Respondent. | |

---

Petitioner Gary Debenedetto was committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246 by the United States District Court for the Eastern District of North Carolina in 2014. *See United States v. Debenedetto*, 618 F. App'x 751, 752 (4th Cir. 2015) (per curiam). Since then, he "has made requests in multiple jurisdictions for habeas corpus relief (or for relief that has subsequently been interpreted by the courts as habeas in nature)." *Debenedetto v. Rardin*, No. 22-cv-1470 (NEB/BRT), 2022 WL 3648699, at *2 (D. Minn. June 28, 2022) (describing procedural history), *R. & R. adopted*, No. 22-cv-1470 (NEB/BRT), 2022 WL 3647823 (D. Minn. Aug. 24, 2022), *aff'd*, No. 22-2873, 2022 WL 18956505 (8th Cir. Sept. 29, 2022). In this case filed on March 1, 2024 (Doc. 1), Mr. Debenedetto again challenges the legality of his civil commitment, arguing that the doctor who testified at the civil-commitment hearing conducted in 2014 offered knowingly false testimony about Mr. Debenedetto's criminal history and conduct while detained.

Mr. Debenedetto's Amended Habeas Petition (Doc. 4) is now before the Court for review under Rule 4 of the Rules Governing Section 2254 Cases in the United States

District Courts.[1] As a result of that review, this Court recommends that the habeas petition be denied, the pending application concerning fees be denied as moot, and that this case be dismissed.

During the course of Mr. Debenedetto's civil-custody proceedings,

> Dr. Robert Lucking—a staff psychiatrist at the Federal Medical Center in Butner, North Carolina . . . —issued a report concluding that Debenedetto suffers from schizoaffective disorder and antisocial personality disorder and that his mental illness is such that his release would pose a substantial risk of bodily injury to another person or serious damage to the property of another.

*Debenedetto*, 618 F. App'x at 752. Along with submitting his report on Mr. Debenedetto's medical condition, Dr. Lucking also testified at the hearing conducted in the civil-custody proceedings. The amended habeas petition claims that Dr. Lucking testified that Mr. Debenedetto had been arrested "dozens and dozens of times" for assaulting a police officer with a deadly weapon. (Doc. 4 at 4.) According to Mr. Debenedetto, this testimony was knowingly false, and the government therefore should not have relied on it in seeking his commitment under § 4246.

There are at least three problems with Mr. Debenedetto's claim. The first is that Dr. Lucking never offered much of the testimony that Mr. Debenedetto ascribes to him. For example, the entirety of Dr. Lucking's testimony at the civil-commitment hearing regarding Mr. Debenedetto's criminal history is recounted here:

> Oh, he has an extensive criminal history dating back to the age of 16 in 1976. I have kind of outlined in the report, it was too lengthy to identify every

---

[1] The amended habeas petition became operative upon filing. See Fed. R. Civ. P. 15(a)(1). Mr. Debenedetto's amended habeas petition is not brought pursuant to 28 U.S.C. § 2254, but the Rules Governing Section 2254 Cases may nevertheless be applied to his petition. See Rule 1(b).

2

> charge and the outcome. I don't remember how many pages it was almost 60 pages of NCI report.
>
> He has been arrested at least 36 times in five different states, including Michigan, Texas, Colorado, Nevada and California. He has used several aliases, two of which aren't related to his actual name. He has two social security numbers. He has at least 13 charges related to weapons, multiple firearms violations, carrying concealed weapon, exhibiting a deadly weapon, carrying a prohibited weapon, which was a switchblade and brass knuckles at the time.
>
> He has 12 property crimes that range from vandalism to burglary. He has at least 16 charges related to assault. One of them is detailed in this report, which includes assault with a deadly weapon, domestic violence, and assault (unintelligible). He has 18 arrests for making threats, two for intimidating others, including two bomb threats, in April of '96. He has 16 charges relating to obstructing a police officer and battery of a police officer. He has five charges related to violations of court orders, which I believe were restraining orders taken out against him for his behavior against other individuals.

*United States v. Debenedetto*, No. 5:14-HC-2172-FL, (Doc. No. 23 at 6–7) (E.D.N.C. Feb. 13, 2015). The allegedly false statement ascribed to Dr. Lucking that Mr. Debenedetto had been arrested "dozens and dozens of times" for assaulting a police officer with a deadly weapon was never made by him—an obvious impediment to Mr. Debenedetto procuring habeas relief on the basis of that false testimony.

Mr. Debenedetto also alleges that Dr. Lucking testified falsely that he had assaulted other detainees and facility staff during the period prior to his civil commitment—an allegation that could only be false, argues Mr. Debenedetto, because he was confined to restrictive housing during that period. (*See* Doc. 4 at 5.) As an initial matter, Dr. Lucking testified only that Mr. Debenedetto had assaulted and harassed officers, not other detainees. *Debenedetto*, No. 5:14-HC-2172-FL, (Doc. No. 23 at 7–8.) Even leaving that discrepancy

3

aside, however, Mr. Debenedetto does not explain how his having been confined to restrictive housing would have precluded him from the actions described by Dr. Lucking at the commitment hearing.

Second, despite Mr. Debenedetto's characterization of the allegedly false testimony as newly discovered evidence, the fact that Dr. Lucking had falsely testified at the civil-commitment hearing (if he had, in fact, falsely testified) would have been known to Mr. Debenedetto at the very moment that the false testimony was offered. There is no reason, then, that Mr. Debenedetto could not have raised a claim premised upon the false testimony on direct appeal from the civil-commitment order. This would have been the most appropriate procedural vehicle through which to challenge the validity of a commitment premised on false evidence, and the failure to raise the claim then amounts to procedural default. "Where a [petitioner] has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the [petitioner] can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quotations and citations omitted). Mr. Debenedetto cannot offer cause for the failure to raise the claim on direct appeal (where he was represented by counsel), and he cannot credibly allege that he was not "suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another," 18 U.S.C. § 4246(d), at the time that he was civilly committed, *see Debenedetto*, 618 F. App'x at 752–53 (summarizing the substantial evidence supporting the district court's finding of dangerousness).

Third, just as there is no reason that Mr. Debenedetto could not have raised this false-testimony claim on direct appeal, there is no reason that Mr. Debenedetto could not have raised this false-testimony claim in one of his prior habeas petitions attacking the validity of his civil commitment. "The abuse of the writ doctrine prohibits federal detainees from filing 'abusive' habeas petitions, which are petitions that seek to raise new claims that could have been raised in a prior habeas proceeding." *Perkins v. Holder*, No. 13-cv-2874 (PAM/FLN), 2014 WL 755378, at *3 (D. Minn. Feb. 26, 2014) (emphases removed), *aff'd* (Dec. 9, 2014). A petitioner cannot return to federal court each time a new habeas claim happens to occur to him. Instead, the abuse-of-the-writ doctrine requires that the petitioner raise the claim at the first available opportunity. Ten years and multiple habeas petitions after Mr. Debenedetto's commitment proceedings, it is now too late for Mr. Debenedetto to present habeas claims that would or should have been known to him earlier.

For all of these reasons, it is recommended that the habeas petition be denied and this matter dismissed. Finally, should the habeas petition be summarily denied as recommended, Mr. Debenedetto's pending application to proceed *in forma pauperis* (Doc. 5) should be denied as well. *See Kruger v. Erickson*, 77 F.3d 1071, 1074 n.3 (8th Cir. 1996) (per curiam).

## RECOMMENDATION

Based on the above, and on all of the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Petitioner Gary Debenedetto's Amended Petition for Writ of Habeas Corpus (Doc. 4) be **DENIED**;

5

2. This matter be **DISMISSED**; and

2. Mr. Debenedetto's Application to proceed *in forma pauperis* (Doc. 5) be **DENIED AS MOOT**.

Date: March 29, 2024                              *s/Douglas L. Micko*
                                                  DOUGLAS L. MICKO
                                                  United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).